IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ] | |
| **Plaintiff,** | ] | |
| v. | ] | **CR-09-BE-0230-S** |
| **TIMOTHY JAMES HOGLAND,** | ] | |
| **Defendant.** | ] | |

### MEMORANDUM OPINION AND ORDER

This matter comes before the court on the Defendant's Motion to Suppress (doc. 14). The Defendant seeks to suppress the photo line-up identification of the Defendant and the gun found in the house when the Defendant was arrested.

The court held a hearing on August 11, 2009, at which testimony and exhibits were presented. For the reasons stated below, the motion is DENIED as to both the photo line-up and the gun.

   1.   <u>Photo Line-up</u>

After the car, which was stolen at gun point from the victim Wilbur Wilson, was recovered, Detective Beedle notified Mr. Wilson that the BMW had been recovered and was available to be picked up. Detective Beedle asked the victim to describe the carjacker. Wilson described the assailant as a white male, 6'2" – a bit taller than himself – around 195 pounds, and 20 to 25 years old. The victim told Beedle that he had seen the assailant clearly and that he was

1

fairly confident he could identify the robber from a line-up or from a photo.[1]  Detective Beedler asked the victim if he would look at a photo line-up when he came to pick up the car.

Detective Beedle testified as to the procedures used to obtain photographs of people with similar physical traits of the Defendant.  Government's Exhibits 8 and 9 are copies of the photo line-up shown to the victim, with Exhibit 9 bearing the victim's written statement identifying the Defendant as the person who stole his car.

The six photos on the photo line-up sheet were selected because of physical traits similar to those of the Defendant.  Prior to showing the photo line-up to the victim, Detective Beedler read him a prepared statement that cautioned that hair styles may differ, that the suspect may or may not be included, etc.  The victim almost immediately identified the Defendant as the robber and stated that he was "110% sure" of the identification.

The Defendant challenged the victim's ability to observe the assailant at the time of the carjacking because the event occurred at night and the victim's attention may have been focused on the gun.  However, Detective Beedler testified that the section of the Chili's parking lot where the carjacking occurred was well lighted with ambient lights from the building as well as large pole lights.  The BMW had been parked in the fourth or fifth parking space from the door.  Detective Beedler was familiar with the lighting because he used to patrol that area, including the parking lot.  The victim had stated that the encounter lasted 45 to 90 seconds, and that he and the robber were only three to five feet apart.

---

[1]Defense counsel argued that the language used by Detective Beedle in discussing the photo line-up with the victim was somehow unduly suggestive.  I have reviewed a draft transcript of Detective Beedle's testimony and do not find anything particularly suggestive in his description of any conversations or interactions he had with the victim concerning the victim's ability to identify the assailant.

The court finds that, considering the totality of the circumstances, the photo line-up in this case was not "unnecessarily suggestive." *See Simmons v. United States*, 390 U.S. 377, 383-85 (1968). Further, the conditions at the scene of the crime were not such as to make the victim's identification of the Defendant as the perpetrator of the crime unreliable. Of course, this ruling does not foreclose cross examination of the victim on this issue at trial.

    2.    The Gun

When the FBI agents and assisting law enforcement agents went to execute the arrest warrant for the Defendant on June 30, 2009, he did not open the door of the residence but instead hid in a closet. After repeatedly knocking on the door and announcing their presence, and hearing someone moving inside, the officers entered the house by using a ramming device to open the door. The agents systematically cleared rooms in the house and found an individual on a bed, whose name was Cliff. Cliff told the officers that the Defendant was in, or had just been in the house. The officers continued looking for the Defendant in places large enough to hide a body. FBI agent Gerhardt, on the second search through the house, flipped up a bed and saw a gun on the floor. The gun was photographed where it was found and then seized. About two or three minutes later, after securing the gun, the officers found the Defendant hiding in a closet in another bedroom.

The Defendant asserts that the officers conducted a search of the residence without a search warrant and that the gun found during that warrantless search should thus be suppressed.

Three of the officers involved in executing the arrest warrant testified that they only searched places in the house where a person could be hiding. The gun was found when Agent Gerhardt flipped over a bed under which a person could be hiding. Instead of finding the

Defendant, he found the gun. The officers all denied that they or anyone else on the team searched any drawers or cabinet, etc., that were too small to hide a body.

The Defendant offered photographs allegedly taken by a third person of the house after the Defendant was arrested. However, the testimony concerning the circumstances surrounding who took the photographs and when they were taken was very confusing. The undisputed evidence established that the gun was found under a bed where the officers had a right to look when trying to find the object of the search warrant. Thus, the gun was found while lawfully executing the arrest warrant and need not be suppressed. *See Maryland v. Buie*, 494 U.S. 325, 332-33 (1990) ("Possessing an arrest warrant and probable cause to believe [the arrestee] was in his home, the officers were entitled to enter and search anywhere in the house in which [he] might be found."); *United States v. Ehlebracht*, 693 F.2d 333, 338 (11th Cir. 1982) (finding that a search incident to a lawful arrest was permissible, and contraband found pursuant to that search was admissible against the defendant).

For these reasons, the motion is DENIED.

DONE and ORDERED this 19th day of August 2009.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE